IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re ARDEN VAN UPP,<br><br>        Debtor,<br>                                                /<br>ARDEN VAN UPP,<br><br>        Appellant,<br><br>v.<br><br>WENDEL, ROSEN, BLACK & DEAN, LLP,<br>and DAVID A. BRADLOW, TRUSTEE,<br><br>        Appellees.<br>                                                / | No. C 11-00178 SI<br><br>**ORDER RE: DECISIONS OF**<br>**BANKRUPTCY COURT** |

       Debtor Arden Van Upp appeals two orders of the United States Bankruptcy Court. Pursuant to Bankruptcy Local Rule 8012-1, the Court finds this matter appropriate for resolution without oral argument. After consideration of the record and the papers submitted by the parties, the Court AFFIRMS the order awarding fees to trustee's counsel, AFFIRMS IN PART and REVERSES IN PART the order awarding fees to trustee, and requires trustee to disgorge fees in the amount of $225.

**BACKGROUND**

       Debtor filed a voluntary petition for Chapter 11 bankruptcy on July 10, 2009. *See* Petition (Bankr. Case No. 09-31932, Doc. 1). At the time debtor filed for bankruptcy, her estate included three real properties located in San Francisco: one located at 2550 Webster Street ("Webster Street Property"), one located at 2807-2809 Steiner Street ("Steiner Street Property"), and one located at 1019

Ashbury Street ("Ashbury Street Property"). *See* Schedule A - Real Property (Bankr. Doc. 48). In August 2009, several secured creditors objected to debtor's marketing plan for the Webster Street Property, calling her proposed listing price "unrealistic given the rundown condition of the . . . property." *See* Secured Creditors' Joint Marketing Plan for 2550 Webster Street (Bankr. Doc. 68), at 3. These secured creditors requested the appointment of a trustee to take over the sale effort. *Id.* at 4. The Bankruptcy Court entered an order directing the appointment of a chapter 11 trustee, and later approved the appointment of David A. Bradlow as trustee of debtor's bankruptcy estate. *See* Order (Bankr. Doc. 82); Order (Bankr. Doc. 88).[1]

The Bankruptcy Court made the following findings of fact regarding debtor's conduct between trustee's appointment and January 2010:

> [A]fter the court appointed a chapter 11 trustee, Debtor interfered with the efforts of that Trustee to sell the Webster Street property, and to collect rents from the Ashbury Street and Steiner Street properties. Declarations filed by Trustee and his counsel indicate that Debtor: (1) refused to turn over legible or complete rent rolls to the Trustee; (2) refused to turn over keys to the Steiner Street gate and front door, forcing the Trustee to engage a locksmith replace the locks; (3) deposited rents into her daughter's checking account, returned those rents to Trustee only upon threat of a turnover motion, and never provided an accounting of the rents in question; (4) ordered workman who were trying to repair Webster Street's severely dilapidated roof and back wall to leave the premises; (5) authorized a man (Petrizze) to live on the Webster property without a lease and defended him at eviction proceedings after having told the Trustee that Petrizze had no authority to live on the property; (6) failed to collect half of the scheduled $36,000 in rents for September and October 2009[fn]; AND (7) after the Trustee's appointment, directed a tenant to pay rent to Debtor via an alias. When Trustee filed a motion to approve procedures for the sale of the Webster Street property, Debtor brought a motion to dismiss the chapter 11 case, which the court denied. . . . [fn] In addition to these acts, after Trustee's appointment and without any authorization by Trustee or this court, Debtor withdrew $40,000 cash from estate bank accounts.

*See* Memo Re: Secured Creditor Fees (Bankr. Doc. 238), at 4–5 & n.1.

In 2010 and 2011, debtor filed six appeals and original proceedings in the district court,

---

[1] As the Bankruptcy Court later explained:
[The Court] ordered the appointment of a chapter 11 trustee on the basis of Debtor's gross mismanagement of her financial affairs. The most important instances of mismanagement consisted of: (1) allowing the Webster Street property to fall into an extreme state of disrepair; and (2) discharging her attorney when he filed a motion to effect the sale of the Webster Street property, where Debtor did not have sufficient income to service the debt on that property, where the court had advised Debtor that relief from stay would be granted if Debtor did not attempt to sell that property promptly, and where the Debtor had equity in that property that would be lost if relief from stay was granted and the Webster Street property was lost in foreclosure.
Memo re: Debtor's Mot. to Dismiss Trustee (Bankr. Doc. 414), at 2.

2

including a civil complaint against trustee for financial elder abuse, breach of fiduciary duty, and negligence. With the exception of this appeal, all were dismissed by this Court for failure to prosecute, for lack of adequate cause, or for lack of jurisdiction.[2] Another individual, Samuel Sloan, filed a motion in the Bankruptcy Court to remove trustee, a motion for withdrawal of reference, and four appeals of multiple orders of the Bankruptcy Court that were each dismissed for lack of standing.[3]

Sloan describes himself in Bankruptcy Court filings as a "close personal friend of Arden Van Upp" who resided at the Webster Street property from 1991 until sometime after debtor filed for bankruptcy. *See* Motion (Doc. 177), ¶ 3. Sloan states that trustee initiated eviction proceedings against him in the San Francisco County Superior Court. *Id.* ¶ 2. Debtor confirms this story. *See* Memo. in Oppo. (Bankr. Doc. 278). The Bankruptcy Court described Sloan as "an officious . . . meddler, to say the least," declared him to be a vexatious litigant on debtor's motion, and imposed a filing injunction against him in the bankruptcy case. Feb. 2010 Transcript 4:14–4:15, 5:25–6:1 (Appellees' Appendix 78–79); Tentative Ruling (Bankr. Doc. 293); Order (Bankr. Doc. 302). The Bankruptcy Court also found that Sloan "at all relevant times had very close connections with the debtor." December 2010 Transcript 8:6–8:7 (Appellees' Appendix 409).[4]

Around the same time that debtor filed her motion to declare Sloan a vexatious litigant, trustee requested permission to use estate assets to file a complaint against Sloan for defamation. Although the

---

[2] *See* Cases No. 10-01431 SI, 10-01699 SI, 10-02616 (appeals of bankruptcy case filed by debtor, dismissed for failure to prosecute); Case No. 10-01934 SI (motion to withdraw reference filed by debtor, denied for lack of adequate cause); Case No. 10-2559 SI (civil complaint filed by debtor against trustee, dismissed for lack of jurisdiction).

[3] *See* Motion (Bankr. Doc. 278); Case No. 10-01149 SI (motion for withdrawal of reference filed by Samuel Sloan, opened in error as a district court case); Cases No. 10-00204 SI, 10-00396 SI, 10-00577 SI, 10-00578 SI (appeals of bankruptcy case filed by Samuel Sloan, dismissed for lack of standing).
Trustee argues that debtor admitted to the Bankruptcy Court that it was she who signed the notices of these appeals, citing the transcript of a June 2010 hearing (Appellees' Appendix 188 ln 21). However, it appears from the context of debtor's admission that she was acknowledging having signed her own name on her own notices of appeal, discussed supra footnote 2 , in response to an inquiry as to whether or not her signature had been forged. *See id.* at lns 22–24.

[4] Trustee argues that debtor "provided her valuable assistance" to Sloan by "delivering each of Sloan's motions to the Bankruptcy Court for filing." Appellees' Br. at 5 & n. 19 (citing Mot. to Withdraw Reference (Bankr. Doc. 366), ¶ 11). Trustee's argument is based on an uncorroborated statement by Sloan himself contained in one of Sloan's filings, not on an admission by debtor or a finding of fact by the Bankruptcy Court.

3

Bankruptcy Court issued a tentative ruling against trustee before the hearing on his motion, *see* Tentative Ruling (Bankr. Doc. 293), ultimately the Bankruptcy Court gave him permission to file a complaint for declaratory and injunctive relief in an adversary proceeding in the Bankruptcy Court using estate assets, *see* Feb. 2010 Transcript 61:17–61:21 (Appellees' Appendix 135) ("I'm inclined to allow you a reasonable amount of fees to try to get this . . . carefully-tailored relief."); Order (Bankr. Doc. 425) (Appellees' Appendix Tab 15) (granting trustee's application for compensation and reimbursement); Order (Bankr. Doc. 426) (Appellees' Appendix Tab 16) (granting counsel for trustee's application for compensation and reimbursement); *see also* Adversary Proceeding No. 10-03040.

Over the course of the bankruptcy proceedings, debtor has repeatedly attempted to have her case dismissed.[5] At one point, the Bankruptcy Court issued a conditional dismissal, upon debtor's former counsel's "representation that all disputes would be resolved by withdrawal of notices of appeal" and that "debtor wished to . . . stop the litigation and provide for the payment of all claims, including administrative claims." *See* December 2010 Transcript 3:18–4:4 (Appellees' Appendix 404–05). At a December 2010 hearing, however, the Bankruptcy Court found that the conditional dismissal was "not really relevant anymore, because the conditions that attach to it are unlikely ever to be fulfilled," given that debtor dismissed the attorney who had made those representations, and that she made "a 180-degree change in the course of conduct that he indicated the debtor would follow." *Id.* TR 4:5–4:10 (Appellees' Appendix 405).

The December 2010 hearing concerned the second fee applications filed by trustee and trustee's counsel, which debtor opposed. Debtor argued that the expenses incurred were unnecessary and excessive given that the estate was "basically in a conditional dismissal situation," *id.* TR 3:11 (Appellees' Appendix 404), and in particular she challenged the money that trustee and trustee's counsel

---

[5] She has also moved for the dismissal of trustee. In a July 2010 Order denying debtor's June 2010 motion, the Bankruptcy Court explained that

> not all creditors have been paid. Debtor has filed appeals that Trustee must defend. Debtor has filed a lawsuit that Trustee must defend. Trustee may be entitled to be reimbursed by the estate for fees and costs incurred in those disputes. This court is not [confident] that Debtor can be trusted to preserve and manage the funds of the estate pending the outcome of those disputes. Based on Debtor's conduct in this case, this court is not confident that Debtor would obey orders that this court might enter directing her to use such funds to pay fees of Trustee and his professionals.

Memo. Re: Debtor's Mot. to Dismiss Trustee (Bankr. Doc. 414), at 2.

4

spent litigating appeals, litigating debtor's civil complaint against trustee, and litigating against Sloan. Debtor argued that such litigation was not necessary for the administration of the estate or otherwise beneficial to debtor.

After having explained that the conditional dismissal order was no longer relevant, the Bankruptcy Court rejected these arguments:

> [W]e are in the kind of case where there is a lot of litigation, where orders that have been entered by the Court are subject to appeal. Where – in which the trustee is defending orders entered at the request of the trustee and that have been on motions that have been granted by this Court.
> And it is just axiomatic that the estate funds may be used to defend orders entered in motions made by the trustee that have been granted by the Court.
> Now there's a lot of money being spent in this case, it's true. And it's money that could otherwise go to the debtor, that's true. But the money is being – all that money is being spent. The fees are [being] incurred, because the debtor is unduly contesting things, is contesting matter, after matter, after matter.
> Now the debtor can do that, but the debtor can't – has no right to have the trustee not defend orders that have been entered by the Court. The trustee is really – the debtor is really spending her own money.

*Id.* TR 4:11-5:3 (Appellees' Appendix 405–06).

The Bankruptcy Court also made findings of fact at the hearing regarding the activities for which trustee and trustee's counsel sought reimbursement:

> [W]ith respect to each of those activities I find that it was very much appropriate for the trustee to hire counsel to assist the trustee in the activities in question, responding to the appeals, keeping current with the operating reports, defending the litigation brought against the trustee, obtaining judgment for libel perpetrated against the trustee in circumstances which strongly indicate that the party committing the libel was – at all relevant times had very close connections with the debtor, responding to an objection to a fee application – if I haven't mentioned it earlier, defending the appeals of orders entered by this Court, responding to a motion to withdraw reference.
> In certain limited categories within that, there are objections as to the amount of the fees sought. That has to do with the fee application. It has to do with the Sloan litigation and the motions to dismiss in the – in the litigation brought against the trustee by debtor.
> And in those instances where the reasonableness of amount of fees incurred was brought at issue, not just the – whether the conduct itself was necessary, the services were necessary, I find in each instance that the fees are reasonable, given the nature [of] the controversy and are supported by the declarations.
> Regarding the fee application, the amount sought [in] the fee application would be unreasonably large were there not an objection and/or had the debtor – had the trustee not prevailed in the objection. But given the fact that there was an objection and that the trustee prevailed, the amounts are reasonable.
> The amounts sought in the litigation brought against the trustee in the District Court are not unreasonable due to the nature of the controversy and are supported by the time sheets.
> The same with respect to the Bradlow versus Sloan matter. The trustee heeded the Court's admonition to – to seek a determination, not a large damage award, to seek limited

5

**United States District Court**
For the Northern District of California

>    scope of relief.
>         The trustee was initially seeking to hold much more money than was expended here. And given all of the circumstances I think the amount sought was reasonable and was again supported by the time sheets.
>         But I'm going to overrule this objection and allow[] the fees as requested, you know, again – but once again, that the – the trustee as – the trustee has not created this situation. The debtor has. Everything I've seen in this case so far indicates that the trustee has acted efficiently and in every respect properly.
>         And I see no reason why the – why the trustee and the trustee's counsel should suffer a financial loss in addition to the – to the abuse that's being piled on them. The fees are – are allowed, and you may submit orders.

*Id.* TR 7:24–9:24 (Appellees' Appendix 408–10).

The Bankruptcy Court entered orders granting the second fee applications of trustee and trustee's counsel, awarding trustee $24,705.00 in fees and $25.15 in costs, and awarding trustee's counsel $127,775.50 in fees and $3,553.74 in costs. *See* Order (Bankr. Doc. 425) (Appellees' Appendix Tab 15) (granting trustee's application for compensation and reimbursement for the period March 1, 2010 through November 26, 2010); Order (Bankr. Doc. 426) (Appellees' Appendix Tab 16) (granting counsel for trustee's application for compensation and reimbursement for the period March 12, 2010 through October 31, 2010). The two orders are the subject of this appeal.

**LEGAL STANDARD**

A bankruptcy court's conclusions of law, including its interpretation of the Bankruptcy Code, are reviewed de novo. *In re S. Cal. Sunbelt Developers, Inc.*, 608 F.3d 456, 461 (9th Cir. 2010). A bankruptcy court's findings of fact are reviewed for clear error. *Higgins v. Vortex Fishing Systems, Inc.*, 379 F.3d 701, 705 (9th Cir. 2004). A factual finding is clearly erroneous if, after reviewing the record, the appellate court has a definite conviction an error has been made. *In re Beauchamp*, 236 B.R. 727, 729-730 (9th Cir. BAP 1999). Where "the historical facts are established; the rule of law is undisputed . . . ; and the issue is whether the facts satisfy the legal rule," a mixed question of fact and law is presented and is reviewed de novo. *See In re Bammer*, 131 F.3d 788, 792 (9th Cir. 1997).

A fees award will be upheld unless the bankruptcy court abused its discretion or erroneously applied the law. *S. Cal. Sunbelt Developers*, 608 F.3d at 461; *see also In re Strand*, 375 F.3d 854, 856 (9th Cir. 2004).

6

**DISCUSSION**

**I.     Order granting the second fee application of trustee's counsel**

    **A.     Preparation of the first fee application**

Debtor quotes the local bankruptcy guidelines for the proposition that fees for preparation of a fee application may not exceed five percent of the total amount of fees and costs requested in the application. See Guideline 6, U.S. Bankr. Ct. for the N. Dist. of Cal., Guidelines for Compensation and Expense Reimbursement of Professional and Trustees ("Guidelines"), *available at* http://www.canb.uscourts.gov/procedures/dist/guidelines/guidelines-compensation-and-expense-reimbursement-professional-and-trustee. Debtor argues that the award sought and granted by trustee's counsel for "Employment and Compensation of Professionals" exceeds this five percent cap. She also argues that the award is unreasonable, and that trustee's counsel is not entitled to the award because it is for work that did not benefit the estate or aid in its administration.

Trustee's counsel requested and received $27,771.00 for what they called "Employment and Compensation of Professionals," which they documented in Exhibit A to their second fee application. *See* Bankr. Doc. 418 (Appellees' Appendix Tab 10), Ex. A. It is clear from Exhibit A of trustee's counsel's second fee application, which lists the tasks that were part of the challenged category, that a certain portion of the $27,771.00 award was intended to compensate trustee's counsel for time spent advising *trustee* about *trustee's* first fee application, which debtor had challenged. No portion of the award was for time spent preparing *trustee's counsel's* first fee application.[6] Therefore, it is not subject to the Guidelines cap.

Section 330(a)(4) of the Bankruptcy Code provides that a trustee or employed professional person may not be compensated for services that were not reasonably likely to benefit the debtor's estate or otherwise necessary to the administration of the case. "The absence of a monetary benefit to the estate is not determinative of whether compensation for . . . attorneys is awarded or denied." *In re HCS Corp.*, 59 B.R. 307, 309 (Bankr. S.D. Cal. 1986). As one bankruptcy court explained:

---

[6] Trustee's counsel separately requested and was awarded $12,104 for services related to obtaining approval of their own first fee application, which they documented in Exhibit E to their second fee application. This award was for fees constituting 4.2% of the fees allowed in the first fee application, and therefore is under the Guidelines cap. *See id.*, Ex. E.

> Trustees are an integral part of the successful operation of the bankruptcy laws. If this Court required the trustee to pay for his or her own representation, given the relatively modest compensation the Code provides for trustees, the practical effect would be that few trustees would be willing to serve. This is especially true regarding non-attorney trustees. The Ninth Circuit has expressly recognized the concern that absent provisions for adequate compensation of bankruptcy professionals, highly qualified professionals would abandon bankruptcy work in favor of more remunerative kinds of work.

*HCS*, 59 B.R. at 310 (citing *In re Nucorp Energy, Inc.*, 764 F.2d 655, 658 (9th Cir. 1985)). On the basis of this reasoning, bankruptcy courts have determined that "[a] representative of the bankruptcy estate in otherwise good standing is entitled to defend him or herself from allegations of malfeasance by a creditor, and, unless malfeasance is established, the estate shall bear the reasonable costs of such defense." *See In re Yellow Cab, Co.*, 212 B.R. 154, 159 (Bankr. S.D. Cal. 1997) (explaining that this is the rule established by *HCS*, and that the rule is "correct"). The same logic applies to defense of claims of malfeasance made by the debtor.

The Bankruptcy Court made a specific finding that it was appropriate for trustee to hire counsel to assist him with the challenges to his fee application, and that the amount sought to compensate trustee's counsel for these services was "reasonable" because "there was an objection" to trustee's fee application and "the trustee prevailed." The amount was also "supported by the declarations." December 2010 Transcript 7:21–9:2 (Appellees' Appendix 408–10). These findings are not clearly erroneous. Given the facts of this case, and the *Yellow Cab/HCS* rule, it was not an abuse of discretion for the Bankruptcy Court to award trustee's counsel compensation from the estate for the reasonable costs of successfully defending trustee's application for a fee award from a challenge by debtor.

### B.     Case administration

Debtors argues that the hours trustee's counsel spent on "case administration" were not beneficial to the estate, did not aid in the administration of the estate, and that the fees awarded for that work were not reasonable.

In their second fee application, trustee's counsel requested fees for 66.30 hours of work spent: (1) attempting to comply with the Bankruptcy Court's order of conditional dismissal by negotiating with debtor's counsel regarding how the necessary conditions of dismissal could best be met, and (2)

8

1 responding to appeals, the motion for withdrawal of reference, and the motion for removal of trustee.[7]

2 Time spent attempting to settle the estate was reasonably likely to benefit the estate, and in fact would have benefitted the estate had debtor not made "a 180-degree change in [her] course of conduct." *Id.* TR 4:8–4:9 (Appellees' Appendix 405).

The Bankruptcy Court made a specific finding that it was appropriate for trustee to hire counsel to assist him "defending the appeals of orders entered by" the Bankruptcy Court, "responding to a motion to withdraw reference," and "defending . . . the trustee," and that the amount sought to compensate trustee's counsel for these services was "reasonable." The amount was also "supported by the declarations." December 2010 Transcript 7:21–9:2 (Appellees' Appendix 408–10). These findings are not clearly erroneous. Given the facts of this case, and the *Yellow Cab/HCS* rule, it was not an abuse of discretion for the Bankruptcy Court to award trustee's counsel compensation from the estate for the reasonable costs of successfully defending orders entered granting trustee's motions.[8]

### C.   Litigation: debtor v. trustee

Debtor argues that time spent by trustee's counsel's defending trustee in the civil suit debtor brought against him was not beneficial to the estate, and did not aid in the administration of the estate, and therefor that the Bankruptcy Court erred as a matter of law when it permitted trustee's counsel to obtain compensation from the estate for the litigation costs associated with the civil case.

"A representative of the bankruptcy estate in otherwise good standing is entitled to defend him or herself from allegations of malfeasance by a creditor, and, unless malfeasance is established, the estate shall bear the reasonable costs of such defense." *See In re Yellow Cab, Co.*, 212 B.R. 154, 159

---

[7] Debtor also argues that the award was premature, because it is not yet clear whether trustee will prevail on debtor's appeals and motions. However, trustee has prevailed on the appeals and motions that are part of the "case administration" fee request, or they have been withdrawn by debtor.

[8] It appears from the invoice submitted by trustee's counsel that some or all of the first 11 entries in this category are for work done with regard to the Sloan appeals, for a total of between nine and 10.8 hours of work. *See* Bankr. Doc. 418 (Appellees' Appendix Tab 10), Ex. B. Because it is of benefit to the estate successfully to defend orders from attack by non-parties, for the reasons discussed below in section D regarding debtor v. Sloan litigation, and based on the Bankruptcy Court's findings of fact, it was not an abuse of discretion for the Bankruptcy Court to award trustee's counsel money for this work.

9

1  (Bankr. S.D. Cal. 1997). This is no less true where, as here, the allegation of malfeasance was made by
2  debtor herself. Debtor's civil case was dismissed, and given the facts of this case, the Bankruptcy Court
3  had the discretion to grant trustee's counsel compensation from the estate for the litigation costs
4  associated with the civil case.

### D.  Litigation:  trustee v. Sloan

Debtor argues that trustee's defamation case against Sloan "has nothing to do with her or her estate," that the litigation was not beneficial to the estate and did not aid in the administration of the estate, and therefor the Bankruptcy Court erred as a matter of law when it permitted trustee's counsel to obtain compensation from the estate for the litigation costs associated with the defamation case. She also argues that the $15,236.50 of fees awarded to trustee's counsel for 54.9 hours of work are excessive and unreasonable, since Sloan did not appear to defend himself, and trustee requested default judgment.[9] And she challenges as particularly unreasonable fees awarded for approximately 10 hours spent "review[ing] Google searches for content and URLs re David Bradlow" over three consecutive days immediately preceding trustee's request for default judgment. *See* Bankr. Doc. 418 (Appellees' Appendix Tab 10), Ex. D (entries for Sept. 21–23, 2010).

Trustee's counsel explain that the fees were incurred researching defamation law; conferring with debtor's prior counsel, who believed that he could convince Sloan to remove his defamatory postings; prosecuting the adversary proceeding; and contacting websites to determine what the sites required in a court order before they would remove the posted material. In trustee's counsel's reply brief in support of their second fee application, they explained that "Mr. Sloan continued to post defamatory material on the internet throughout the litigation" and that "Mr. Sloan's continued postings required Applicant to spend significant time searching the internet for new postings and reviewing each posting to determine whether it fell within the limited scope of the litigation." Reply Br. (Bankr. Doc. 422) (Appellees' Appendix Tab 13), at 5. Attached to trustee's brief in support of his motion for default

---

[9] She argues that the award was premature, since trustee's application for judgment is still pending. However, the Bankruptcy Court granted trustee's motion for default judgment in November 2010. *See* Judgment (Bankr. Adversary Proceeding 10-03040, Doc. 11).

10

judgment are exhibits listing each website where each defamatory statement was posted. *See* Decl. of Jeffrey C. Wurms in Supp. of Req. for Entry of Default Judgment, Exs. A–F (Bankr. Adversary Proceeding 10-03040, Doc. 10) (listing many dozens of websites where six documents containing the defamatory statements were posted).

"A representative of the bankruptcy estate in otherwise good standing is entitled to defend him or herself from allegations of malfeasance by a creditor, and, unless malfeasance is established, the estate shall bear the reasonable costs of such defense." *See In re Yellow Cab, Co.*, 212 B.R. 154, 159 (Bankr. S.D. Cal. 1997). Here, Sloan was not a creditor, nor a party to the bankruptcy case. However, the Bankruptcy Court made sufficient findings of fact to bring Sloan within the ambit of the *YellowCab*/*HCS* rule, and those findings were not clearly erroneous. *See* December 2010 Transcript 8:6–8:7 (Appellees' Appendix 409) (finding that Sloan "at all relevant times had very close connections with the debtor."); *see also* Feb. 2010 Transcript 4:14–4:15, 5:25–6:1 (Appellees' Appendix 78–79) (finding Sloan to be "an officious . . . meddler, to say the least"); Order (Bankr. Doc. 302) (declaring Sloan to be a vexatious litigant and imposed a filing injunction against him in the bankruptcy case). Even if debtor is wholly disconnected from Sloan's decisions to interfere in this case and defame trustee, debtor herself admits that "[t]he trustee's problem with Sam Sloan began when he initiated eviction proceedings in the San Francisco County Superior Court," Memo. in Oppo. (Bankr. Doc. 278), at 2, an action that trustee performed as part of his official job at trustee of debtor's estate. The policy reasons articulated in *HCS* for the rule laid out in the case support a fee award under these circumstances as well. *See HCS*, 59 B.R. at 310.

The Bankruptcy Court made a specific finding that it was appropriate for trustee to hire counsel to assist him "obtaining judgment for libel perpetrated against the trustee in circumstances which strongly indicate that the party committing the libel was – at all relevant times had very close connections with the debtor, responding to an objection to a fee application." December 2010 Transcript 7:24–8:7 (Appellees' Appendix 408–09). The Bankruptcy Court also found that "the amount sought the fee application" was "reasonable" and "supported by the time sheets," and that "[t]he trustee heeded the Court's admonition to – to seek a determination, not a large damage award, to seek limited scope of relief." *Id.* TR 8:22–9:14 (Appellees' Appendix 409–10). These findings are not clearly

11

1  erroneous, and the Bankruptcy Court did not abuse its discretion awarding fees for this work.

### E. Monthly operating reports

Debtor objects to fees awarded to trustee's counsel for the preparation and filing of monthly operating reports and other activities regarding those reports, arguing that they are not the type of task for which a trustee may employ professionals. *See In re Jenkins*, 188 B.R. 416, 420 (9th Cir. BAP 1995) ("A trustee may employ professionals only for those tasks that require special expertise beyond that expected of an ordinary trustee.").

Trustee's counsel explains that they requested and were awarded fees for 5.1 hours spent assisting trustee and the estate's accountant with their preparation and filing of monthly operating reports, responding to inquiries regarding those reports, communicating with the U.S. Trustee's Office about modifying reporting requirements, and preparing the pleadings necessary to obtain this Court's approval of the modification.

The Bankruptcy Court found that it was "very much appropriate for the trustee to hire counsel to assist" him with "keeping current with the operating reports." December 2010 Transcript 7:24–8:3 (Appellees' Appendix 408–09). It appears that trustee's counsel devoted approximately one hour to reviewing four monthly operating reports, and that the remainder of the time was spent modifying the reporting requirements for the case. *See* Bankr. Doc. 418 (Appellees' Appendix Tab 10), Ex E. On this record, and given debtor's repeated challenges to work performed by trustee, the Court cannot say that the Bankruptcy Court's finding was erroneous, or that the facts in this case do not satisfy the legal rule articulated in *Jenkins*.

## II.   Order granting the second fee application of trustee

Debtor argues that the fees awarded to trustee are unreasonable and exceed the statutory limit set forth in 11 U.S.C. § 326. In particular, debtor objects to trustee's claim for nearly 25 hours spent completing his first fee application alone, as being in excess of the 5% allowed.

Trustee requested, and was awarded, fees for 12.6 hours of time spent preparing the first fee

12

application.[10] In *In re Dimas, LLC*, 2009 WL 7809032 (9th Cir. BAP Feb. 25, 2009) (per curiam), the BAP held that the Guidelines generally are not mandatory. However, Guideline 6 contains unique mandatory language, and "in light of the mandatory language of this particular Guideline, if the bankruptcy court approves fee application preparation fees in excess of the five percent cap, it must state why." *Id.* at * 7. Because "no explanation was provided" by the bankruptcy court, "it was an abuse of discretion to approve fees for preparation of fee applications in excess of the five percent Guideline." *Id.* at * 7.[11] In this case, trustee admitted in his Bankruptcy Court filings that the 12.6 hour request amounted to 5.5% of the total fees requested by trustee in the first fee application. *See* 2d App. for Interim Compensation (Bankr. Doc. 419) (Appellees' Appendix Tab 11), at 6. Although this is in excess of the cap provided for by Guideline 6, the Bankruptcy Court did not make any finding of fact that would support exceeding the five percent mandatory guideline. This was an abuse of discretion. In light of the mandatory five percent cap contained in Guideline 6, and the lack of an explanation by the bankruptcy court for allowing the cap to be exceeded, the Court REVERSES and ORDERS trustee to disgorge fees in the amount of $225.[12]

The remainder of the award is reasonable, however, and does not exceed statutory limits. Section 326(a) of the Bankruptcy Code limits the compensation that may be awarded to a trustee for his services based on "moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims." Debtor did not argue that trustee's

---

[10] The remaining 11.9 hours were spent litigating debtor's challenges to the fee application. That time is not subject to the 5% cap containing in the Guidelines, and the award of compensation is supported by the Bankruptcy Court's findings of fact regarding expenses incurred due to debtor's conduct, which are not clearly erroneous.

[11] Although the disposition is unpublished and therefore not precedential, the Federal Rules of Appellate Procedure permit the Court to cite the case for whatever persuasive value it may have. The BAP provided a lengthy explanation for why it determined that this particular Guideline is mandatory, the determination that it is mandatory still provides bankruptcy courts sufficient discretion to make reasonable fee awards, and the disposition is in accord with the scant precedent that exists for reviewing application of the Guidelines on appeal, *see In re Agyekum*, 225 B.R. 695, 700 (9th Cir. BAP 1998). The Court adopts the BAP's legal conclusion for the reasons stated in the disposition.

[12] Debtor's argument is not waived. Although she did not cite Guideline 6 to the Bankruptcy Court, she did make a specific objection to the reasonableness of trustee's request for fees for preparing his first fee application. Guideline 6 and the rule adopted from *Dimas* both concern the reasonableness of the fee request, and debtor's argument was properly before the Bankruptcy Court.

award exceeded the limits set forth in Section 326(a) before the bankruptcy court, and therefore the bankruptcy court did not make any specific findings of fact with regard to Section 326(a). However, the bankruptcy court did find that the award was reasonable and supported by trustee's declarations. *See* December 2010 Transcript 7:24–9:24 (Appellees' Appendix 408–10). In one declaration, trustee explained that total disbursements in the case totaled $5,651,315; that the fees permitted by Section 326(a) were therefore $192,789.45; and that the total fees trustee requested in the case equaled $128,565.00. Decl. of David Bradlow in Supp. of 2d App. for Interim Compensation (Bankr. Doc. 419) (Appellees' Appendix Tab 11), Ex. B. Assuming debtor's statutory argument is not waived, it fails, as the Bankruptcy Court did not abuse its discretion or misapply facts to law.

### III.  Waived arguments

Debtor makes a variety of other arguments that she failed to raise at all before the Bankruptcy Court and are waived.

Debtor argues that the fee awards will come directly from money that is part of a $150,000 homestead exemption, only half of which has been released to debtor. Because debtor failed to raise this argument in the Bankruptcy Court, it is waived on appeal.[13] (This determination of waiver is order-specific and is without prejudice to the Bankruptcy Court ruling on a trustee request to surcharge the homestead or a future debtor objection based on the homestead exemption.)

Debtor argues that trustee's counsel have interests adverse to the estate. Debtor failed to raise

---

[13]  Debtor previously requested that the Bankruptcy Court release the $150,000, trustee objected, and the Bankruptcy Court released $75,000. *See* Bankr. Docs. 255 at 2, 265 at 7–8, 299 at 2. Trustee's objections were based on previous findings by the Bankruptcy Court that debtor's conduct had interfered with trustee's administration of the estate. *See* Bankr. Doc. 265 at 7–8. Trustee asked the Bankruptcy Court to "surcharge the Debtor's homestead for the increased costs and fees in administering the estate," citing *In re Onubah*, 315 B.R. 549 (9th Cir. BAP 2007), and indicated that trustee was seeking fees that might preclude awarding debtor the exemption given the limited resources remaining in the estate. *Id.* Although the Bankruptcy Court did not rule on the surcharge request, *see* Bankr. Doc. 299 at 2–3 ¶¶ 7–8, the specific issue was flagged for debtor, and she failed to raise it before the Bankruptcy Court. Moreover, trustee is correct that *Onubah* could support a surcharge. *See* 315 B.R. at 555 (holding that surcharge is available where a debtor attempts to keep nonexempt property out of the hands of the trustee, even if the debtor is not successful, as long as the debtor's misconduct nonetheless deprives the estate and her creditors of "access to property in excess of that which" the debtor could properly exempt); *see also Latman v. Burdette*, 366 F.3d 774, 785–86 (9th Cir. 2004).

14

this argument in the Bankruptcy Court, and it is waived on appeal.[14]

Debtor argues that trustee has breached his fiduciary duty to the estate by failing to expeditiously administer the estate, including by opposing his own dismissal as trustee, and preventing closure and final distribution. Debtor failed to raise this argument in the Bankruptcy Court, and it is waived on appeal.[15]

Debtor argues that the first fee awards granted to trustee and trustee's counsel's should be disgorged. Debtor's appeal of the first fee awards was dismissed for failure to prosecute, *see* Order (Case No. 10-1431, Doc. 14), and she did not argue in the Bankruptcy Court proceedings opposing entry of the orders being appeals in this case that the first fee award should be disgorged. Her arguments are waived.

Debtor appears to challenge the fees awarded to trustee's accountant. *See* Appellant's Opening Br. at 4 ("Is the Trustee's Accountant entitled to compensation?"); Appellant's Reply Br. at 3 ("[A]ccountants could and should have at least explored avenues to reduce her tax bill"). To the extent that she does so, her arguments are waived, as she failed to challenge the accountant's application in the bankruptcy court, and she did not appeal the order granting the application. *See* December 2010 Transcript 2:13–24 (Appellees' Appendix at 403)[16]; Order (Bankr. Doc. 424) (granting accountant fees);

---

[14] Even if it were not waived, the record would not support debtor's argument. Debtor cites *In re Pruitt*, 319 B.R. 636 (Bankr. S.D. Cal. 2004), which discusses the "tension between the Trustee's role as the representative of creditors on the one hand and, on the other hand, his own self-interest in maximizing his compensation." *Id.* at 638. This tension always exists and, when a trustee hires an attorney pursuant to Section 327 of the Bankruptcy Code to assist with the administration of an estate, the tension will exist with regard to the trustee's counsel as well. Significantly more is required before a court could find that the interests of a trustee or trustee's counsel are materially adverse to an estate. *Cf. In re AFI Holding, Inc.*, 530 F.3d 832 (9th Cir. 2008) (explaining that the inquiry into whether a party holds an interest that is materially adverse to bankruptcy estate, so as not to qualify as disinterested under Section 324 of the Bankruptcy Code, necessarily requires an objective and fact-driven inquiry based on the "full panoply of events and elements").

[15] Even if it were not waived, the record would not support debtor's argument. In denying debtor's most recent arguments to close the estate and dismiss trustee, the Bankruptcy Court made specific findings that it is debtor's conduct that has prevented the expeditious administration of the estate. *See* Memo. Re: Debtor's Mot. to Dismiss Trustee (Bankr. Doc. 414), at 2; December 2010 Transcript 4:11-5:3 (Appellees' Appendix 405–06).

[16]
THE COURT: Okay. I have fee applications here in the Van Upp case from the trustee's counsel, the trustee, and the trustee's accountant. There are objections to the applications

15

Notice of Appeal (Bankr. Doc. 427) (Appellees' Appendix Tab 17).

Finally, debtor raises arguments in her reply brief that were not raised in her opening brief and are waived.[17]

**CONCLUSION**

In accordance with the discussion set forth above, the order granting fees to trustee's counsel is AFFIRMED, the order granting fees to trustee is AFFIRMED IN PART and REVERSED IN PART, and trustee is ORDERED to disgorge fees in the amount of $225.

**IT IS SO ORDERED.**

Dated: August 22, 2011

SUSAN ILLSTON
United States District Judge

---

by trustee and trustee's counsel.  There's no objection that I've seen to trustee's accountant.

[DEBTOR'S COUNSEL]: I think we – didn't we combine them, Your Honor, combined objections to trustee's and counsel?

THE COURT: Yeah, but not the accountant.

[DEBTOR'S COUNSEL]: Oh, yes, okay.

THE COURT: Am I missing something?

[DEBTOR'S COUNSEL]: Well, I thought we did, but obviously we didn't, so.

[17] Debtor argues that the Bankruptcy Court improperly stated that she must give up her right to object or appeal in order to seek dismissal. Even if this argument were not waived, it would fail, as the Bankruptcy Court has specifically stated on the record that "debtor can" object and appeal; the problem is that "debtor can't – has no right to have the trustee not defend orders that have been entered by the Court. The trustee is really – the debtor is really spending her own money" when she "unduly contest[s] things, is contesting matter, after matter, after matter." December 2010 Hearing TR 4:11-5:3 (Appellees' Appendix 405–06). She also argues that "General matters cost the debtor $3,547.50 and included taxes which were too high and which no one sought to reduce." Appellant's Reply Br. at 3. It is not clear what debtor's argument is, though it is clear that she did not raise this objection in her opening brief, as she did not discuss "General matters" or taxes.